UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAUREN CHEATHAM, )  | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 16-cv-3015 |
| v. ) | |
| ) | Judge John W. Darrah |
| CITY OF CHICAGO and ) | |
| POLICE OFFICER YESENIA MEDINA, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lauren Cheatham filed a First Amended Complaint ("FAC") in the Circuit Court of Cook County, which was removed to federal court. Plaintiff then filed a Second Amended Complaint ("SAC") against the City of Chicago and Police Officer Yesenia Medina, alleging violations of her civil rights pursuant to § 1983 and several violations of state law. Yesenia Medina filed a Motion to Dismiss [26] the state-law claims against her. City of Chicago (the "City") filed a Motion to Dismiss [22] the *Monell* claim and the malicious-prosecution claim against the City. For the reasons discussed more fully below, Medina's Motion to Dismiss [26] is granted in part and denied in part; and City of Chicago's Motion to Dismiss [22] is granted in part and denied in part.

## BACKGROUND

Lauren Cheatham is a resident of the City of Chicago. (SAC ¶ 1.) The City of Chicago is a municipal entity created and authorized under the laws of the State of Illinois. (*Id.* ¶ 2.) Medina was, at all relevant times, an officer with the Chicago Police Department. (*Id.* ¶ 3.)

On February 22, 2015, Cheatham and her cousin, Dan Bailey, were stopped at a Burger King in the City of Chicago. (*Id.* ¶ 7.) Plaintiff and her cousin are African Americans. (*Id.*)

Several plain-clothes officers, including Medina, approached the vehicle and told Cheatham and Bailey to get out of the car. (*Id.* ¶ 8.) Cheatham and Bailey were placed in separate police vehicles. (*Id.*) Medina asked Cheatham about drugs and whether Bailey was selling drugs. (*Id.* ¶ 9.) Cheatham informed Medina that Bailey was not selling drugs. (*Id.* ¶ 10.) Medina told Cheatham that she had been driving on a suspended license but that she would let Cheatham go if Cheatham would tell her about the drugs. (*Id.* ¶ 11.) Cheatham again told Medina that Bailey was not selling drugs. (*Id.* ¶ 12.) The officers did not arrest Bailey, and no drugs were ever found. (*Id.* ¶ 13.)

Cheatham was arrested and brought to the station. (*Id.* ¶ 14.) Medina questioned Cheatham about drugs, cursed at Cheatham, and told Cheatham that she was lying. (*Id.* ¶ 16.) Cheatham's hands were handcuffed to the table. (*Id.*) After a male officer left the room and shut the door, Medina slapped Cheatham on the face, causing a tooth to come out. (*Id.* ¶ 17.) Cheatham reported Medina to the Independent Police Review Authority. (*Id.* ¶ 19.) Charges were filed against Cheatham, including aggravated assault and resisting and/or obstruction of the performance of a police officer. (*Id.* ¶ 20.) Plaintiff was found not guilty on all charges. (*Id.* ¶ 22.)

**LEGAL STANDARD**

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must allege enough facts to support a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). Facial plausibility exists when the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009). All well-pleaded allegations are presumed to be true, and all inferences are read in the light most favorable to the plaintiff. *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). This presumption is not extended to "legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)). A plaintiff is not required to "plead the elements of a cause of action along with facts supporting each element." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 517 (7th Cir. 2015). Rather, the complaint must provide a defendant "with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Twombly*, 550 U.S. at 555).

## ANALYSIS

### *Officer Medina*

Medina moves to dismiss three state-law claims brought against her in the SAC. Count I alleges assault and battery; Count VI alleges intentional infliction of emotional distress ("IIED"); and Count VII alleges negligent infliction of emotional distress ("NIED").[1]

Medina argues that the NIED claim is barred under the Illinois Tort Immunity Act, which immunizes officers from negligence liability. A police officer "is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 Ill. Comp. Stat. 10/2-202. It is not disputed that Medina was executing or enforcing the law. Plaintiff alleges that Medina, "in assaulting and battering

---

[1] Plaintiff labeled two claims Count IV. Plaintiff's Count V, alleging intentional infliction of emotional distress, is referred to here as Count VI; and Plaintiff's Count VI, alleging negligent infliction of emotional distress, is referred to here as Count VII.

Plaintiff, was careless and negligent as to the emotional health of Plaintiff and caused severe emotional distress to Plaintiff." (SAC, ¶ 111.) The NIED claim is barred by the Illinois Tort Immunity Act, as it is based on negligence. *See Miller v. Womak*, 2010 WL 2522994, at *1 (C.D. Ill. 2010) ("a negligence claim is barred by the Illinois Tort Immunity Act"). Medina's Motion to Dismiss is granted with prejudice as to Count VII.[2]

Medina argues that the claims in Counts I and VI are time-barred under the Illinois Tort Immunity Act. Under the Illinois Tort Immunity Act, tort claims against a government entity or its employees have a one-year statute of limitations. 745 Ill. Comp. Stat. 10/8-101 ("No civil action may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received of the cause of action accrued.") The statute of limitations began to run when Plaintiff received her injuries, February 22, 2015. Plaintiff filed her original Complaint in the Circuit Court of Cook County on February 18, 2016. The FAC was filed on February 22, 2016; and summons and the FAC were served upon the City of Chicago and Defendant Unknown Police Officer on February 29, 2016. The case was removed to federal court on March 10, 2016. Medina was first named as a Defendant in Plaintiff's SAC, which was filed on April 29, 2016.

Plaintiff argues that her claims against Medina are not time-barred because the SAC, in which Plaintiff first identified Medina, relates back to the filing of the original Complaint in state court on February 18, 2016. Where an amendment changes the party or the name of a party against whom a claim is made, that amendment relates back to the original complaint "if, within

_____

[2] Additionally, Plaintiff failed to respond to this issue. A party waives a claim where it "fails to develop arguments related to a discrete issue." *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011).

the period provided by Rule 4(m) for serving the summons and complaint, the party to be

brought in by amendment: (i) received such notice of the action that it will not be prejudiced in

defending on the merits; and (ii) knew or should have known that the action would have been

brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P.

15(c)(1)(C). Previously, the Seventh Circuit consistently held that "'relation back' on grounds

of 'mistake concerning the identity of the proper party' does not apply where the plaintiff simply

lacks knowledge of the proper defendant." *Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 596 (7th

Cir. 2006) (citing *King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 914 (7th Cir. 2000);

*Eison v. McCoy*, 146 F.3d 468, 472 (7th Cir. 1998); *Baskin v. City of Des Plaines*, 138 F.3d 701,

704 (7th Cir. 1998); *Worthington v. Wilson*, 8 F.3d 1253, 1257 (7th Cir. 1993)). This is known

as the John Doe rule. However, after the Supreme Court's decision in *Krupski v.*

*Costa Crociere S.p.A.*, 560 U.S. 538 (2010), the Seventh Circuit, in *Joseph v.*

*Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555 (7th Cir. 2011), held:

> [t]he only two inquiries that the district court is now permitted to make in
> deciding whether an amended complaint relates back to the date of the original
> one are, first, whether the defendant who is sought to be added by the amendment
> knew or should have known that the plaintiff, had it not been for a mistake, would
> have sued him instead or in addition to suing the named defendant; and second,
> whether, even if so, the delay in the plaintiff's discovering his mistake impaired
> the new defendant's ability to defend himself.

*Joseph*, 638 F.3d at 559-60.

Courts in this district disagree on whether lack of knowledge of a defendant's identity

counts as a mistake post-*Krupski*. *Compare Vandenburgh v. Bannockburn Police Officer*

*Robert Ogden*, No. 15 C 6191, 2016 WL 403663, at *3 (N.D. Ill. Feb. 3, 2016) (holding that,

even after *Krupski*, plaintiff's lack of knowledge of the proper defendant does not allow for

relation back under Rule 15(c)(1)(C)'s mistake requirement) *with White v. City of Chicago*, No. 14 CV 3720, 2016 WL 4270152, at *18 (N.D. Ill. Aug. 15, 2016) (finding cases holding that John Doe rule no longer applies after *Krupski*, more compelling).

These cases are persuasive. *Krupski* shifted the inquiry from the plaintiff's knowledge to the defendant's knowledge, and the John Doe rule is based on the plaintiff's knowledge. Further, the purpose of the relation back rule is "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski*, 560 U.S. at 550.

Now, the analysis must consider the questions raised in *Joseph*: "whether the defendant who is sought to be added by the amendment knew or should have known that the plaintiff, had it not been for a mistake, would have sued him instead or in addition to suing the named defendant; and second, whether, even if so, the delay in the plaintiff's discovering his mistake impaired the new defendant's ability to defend himself." *Joseph*, 638 F.3d at 559-60. The FAC was filed in Cook County on February 22, 2016; and the City of Chicago and, at the time, Unknown Defendant Police Officer were served on February 29, 2016. There is nothing in the record to show that Medina could have legitimately believed that the limitations period had passed without any attempt to sue her. Nor has Medina argued that she was unaware of Plaintiff's complaint within the prescribed time.[3] There is also no argument that Medina will be impaired from defending herself. Relation back under Rule 15(c)(1)(C) is proper.

---

[3] The record does not show what allegations were contained in the Complaint first filed in the Circuit Court of Cook County, or when that Complaint was served on the relevant defendant(s).

Even if relation back under Rule 15(c)(1)(C) was inappropriate, Plaintiff argues that state laws concerning relating back should apply. Federal Rule of Civil Procedure 15(c)(1)(A) provides that an amendment will relate back to the original pleading if the law that provides the applicable statute of limitations allows relation back. If the state law that provides the applicable statute of limitations allows relation back, and if it is more favorable than Rule 15(c), state law governs. *Hunt ex rel. Chiovari v. Dart*, 612 F. Supp. 2d 969, 973 (N.D. Ill. 2009) (citing *Henderson v. Bolanda*, 253 F.3d 928, 932 (7th Cir. 2001); *DeRienzo v. Harvard Industries, Inc.*, 357 F.3d 348, 353 (3rd Cir. 2004)). Illinois statute provides that "a cause of action against a person not originally named a defendant is not barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted," if "all the following terms and conditions are met":

> (1) the time prescribed or limited had not expired when the original action was commenced; (2) the person, within the time that the action might have been brought or the right asserted against him or her, plus the time for service permitted under Supreme Court Rule 103(b), received such notice of the commencement of the action that the person will not be prejudiced in maintaining a defense on the merits and knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him or her; and (3) it appears from the original and amended pleadings that the cause of action asserted in the amended pleading grew out of the same transaction or occurrence set up in the original pleading, even though the original pleading was defective in that it failed to allege the performance of some act or the existence of some fact or some other matter which is a necessary condition precedent to the right of recovery when the condition precedent has in fact been performed, and even though the person was not named originally as a defendant. For the purpose of preserving the cause of action under those conditions, an amendment adding the person as a defendant relates back to the date of the filing of the original pleading so amended.

735 Ill. Comp. Stat. 5/2–616(d).  The statute of limitations had not run at the time of the original Complaint or the FAC, and the cause of action asserted in the amended pleading grew out of the same transaction or occurrence as the original pleading.

Illinois courts, pre-*Krupski*, had held that an officer John Doe was not a mistake for the purposes of relation back.  However, this is no longer the case.  *See Borschers v. Franciscan Tertiary Province of Sacred Heart, Inc.*, 962 N.E.2d 29, 49 (Ill. App. Ct. 2011) (holding that, after *Krupski*, "a lack of knowledge about the identity of all of those involved in the alleged wrongdoing qualifies as a 'mistake concerning the identity of the proper party' for the purposes of the relation-back doctrine")).  After *Krupski*, "[a] lack of knowledge regarding a party's identity certainly may constitute 'a mistake concerning the identity of the proper party' under section 2–616(d)."  *Zlatev v. Millette*, 2015 IL App (1st) 143173, ¶ 52, 43 N.E.3d 153, 163 (Ill. App. Ct. 2015).  Therefore, even if the federal rules would not allow the SAC to relate back, Illinois law does.  As the state law that provides the applicable statute of limitations allows relation back and is more favorable than Rule 15(c), state law governs; and relation back is proper under § 5/2–616(d).

Medina's Motion to Dismiss [26] is granted with prejudice as to Count VII.  Medina's Motion to Dismiss [26] is denied as to Count I and Count VI.

### City of Chicago

The City seeks to dismiss two of the counts against it.  Count III is a claim under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), alleging that the City is responsible for excessive force in violation of 42 U.S.C. § 1983 through:  direct policies, practices, customs, and usages; that it was the policy and/or custom of the City to inadequately

train, supervise, and discipline its police officers; and that the City knew about acts of misconduct and was deliberately indifferent. Count IV is a malicious-prosecution claim, alleging that the City intentionally and maliciously instituted and pursued, without probable cause, a legal criminal action against Plaintiff.

Monell Claim

Defendant argues that Plaintiff's *Monell* claim lacks the factual specificity required to state a claim. To state a *Monell* claim against the City for excessive force, Plaintiff is required to "plead[ ] factual content that allows the court to draw the reasonable inference" that the City maintained a policy, custom, or practice of using excessive force, inadequately trained officers on the use of force, or was deliberately indifferent to the use of excessive force. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (internal citations and quotations omitted).

Plaintiff argues that only notice pleading is required under Federal Rule of Civil Procedure 8. However, that is not the current pleading standard. Under *Iqbal* and *Twombly*, a plaintiff must allege enough facts to show that a claim is plausible, *i.e.*, that a reasonable inference can be drawn that the defendant is liable for the misconduct alleged. *See Twombly*, 550 U.S. at 547; *Iqbal*, 556 U.S. at 678. "[T]he plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). A more complex case requires more detail. *Id.* at 405.

Plaintiff's *Monell* allegations are as follows:

54. The City of Chicago directly caused the constitutional violations suffered by Plaintiff, and is liable for the damages suffered by Plaintiff as a result of the conduct of the defendant officer. The conduct of the defendant officers was a direct consequence of policies and practices of Defendant City of Chicago.

55. At all times relevant to this complaint Defendant City of Chicago, acting through the Chicago Police Department, had in effect policies, practices, and customs that condoned and fostered the unconstitutional conduct of the individual defendants, and were a direct and proximate cause of the damages and injuries complained of herein.

56. At all times relevant to this complaint, Defendant City of Chicago, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of encouraging and/or tacitly sanctioning excessive force against African Americans. Upon information and belief, Defendant City of Chicago planned and implemented a policy, practice, custom and usage of interrogating person[s], that was designed to and did preempt lawful activities by illegally detaining persons, using excessive force against persons, retaliating against witnesses to police misconduct, and discouraging police officers from reporting the misconduct of other officers. The City of Chicago consciously disregarded the illegality and unconstitutionality of said detentions, use of force, and retaliation in order to punish and suppress peaceful expression. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

57. The existence [of] these unconstitutional customs and policies, specifically as it relates to [*sic*] is evidenced by the countless repeated occurrences of similar wrongful conduct against African Americans.

58. The City of Chicago knew or should have known of the defendant officers' propensity to engage in misconduct of the type alleged herein. Upon information and belief, prior to February 22, 2015, the City of Chicago was aware of several complaints of police misconduct involving the use of excessive force and retaliatory use of force against law[-]abiding citizens and African Americans. Despite its knowledge of such incidents of prior misconduct, the City of Chicago failed to take remedial action.

59. Additionally, the City of Chicago knew or should have known, more specifically[,] of Defendant Yesenia Medina's propensity to engage in misconduct of the type alleged herein. Upon information and belief, prior to
February 22, 2015, the City of Chicago was aware of numerous claims of constitutional violations involving Defendant Yesenia Medina.

60. Despite its knowledge of such incidents of prior misconduct, the City of Chicago failed to take remedial action.

61. It was the policy and/or custom of the City of Chicago to inadequately and improperly investigate citizen complaints of police misconduct, and acts of

misconduct were instead tolerated by the City of Chicago, including, but not limited to, the incidents listed above.

62. It was the policy and/or custom of the City of Chicago to inadequately train, supervise and discipline its police officers, including the defendant officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers. The City did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.

63. As a result of the above[-]described policies and customs, police officers of the City of Chicago, including the defendant officer, believed that her actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

64. The wrongful policies, practices, customs and/or usages complained of herein, demonstrated a deliberate indifference on the part of policymakers of the City of Chicago to the constitutional rights of persons within the city, and were the direct and proximate cause of the violations of Plaintiff['s] rights alleged herein.

(SAC, ¶¶ 54-64.)

Plaintiff alleges that the City had an official policy involving the use of excessive force. "An official policy or custom may be established by means of [1] an express policy, [2] a widespread practice which, although unwritten, is so entrenched and well-known as to carry the force of policy, or [3] through the actions of an individual who possesses the authority to make final policy decisions on behalf of the municipality or corporation." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012). Plaintiff appears to allege an express policy: "Defendant City of Chicago planned and implemented a policy, practice, custom and usage of interrogating person[s], that was designed to and did preempt lawful activities by illegally detaining persons, using excessive force against persons, retaliating against witnesses to police misconduct, and discouraging police officers from reporting the misconduct of other officers." (SAC ¶ 56.) However, Plaintiff does not allege anything more than that such a policy exists. Conclusory allegations of a "policy or practice" in support of a *Monell* claim "are not

11

factual allegations and as such contribute nothing to the plausibility analysis under *Twombly*/*Iqbal*." *McCauley*, 671 F.3d at 617-18.

Plaintiff also alleges that the City had a policy of inadequately training, supervising, and disciplining police officers.  A failure to train or supervise employees rises to the level of an official policy or custom only where that failure to train amounts to "deliberate indifference to the rights of persons with whom the untrained employees come into contact."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Canton v. Harris*, 489 U.S. 378, 388 (1989)). Plaintiff has alleged that, prior to February 22, 2015, the City of Chicago was aware of several complaints of police misconduct involving the use of excessive force and numerous claims of constitutional violations involving Medina specifically.  Plaintiff also alleges that the City inadequately and improperly investigated citizen complaints of police misconduct and instead tolerated that misconduct.  The allegations that the City knew about, failed to properly investigate, and tolerated misconduct raises a plausible claim that the City was deliberately indifferent through a policy or custom of inadequately training, supervising, and disciplining police officers.

The City of Chicago's Motion to Dismiss [22] Count III is granted to the extent that Plaintiff alleges an express policy and denied to the extent that Plaintiff alleges the City was deliberately indifferent and had a policy or custom of inadequately training, supervising, and disciplining police officers.

<u>Malicious Prosecution</u>

Defendant argues that Plaintiff's malicious-prosecution claim against the City is duplicative and should be dismissed.  Under Illinois law, to establish a claim of malicious

prosecution, a plaintiff must show "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Johnson v. Saville*, 575 F.3d 656, 659 (7th Cir. 2009) (quoting *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996)).

As the City argues, the majority rule in Illinois is that "once an employer admits responsibility under *respondeat superior*, a plaintiff may not proceed against the employer on another theory of imputed liability." *Lambert v. Jung*, No. 13 C 6030, 2015 WL 6736674, at *3 (N.D. Ill. Nov. 4, 2015) (citing *Gant v. L.U. Transport, Inc.*, 770 N.E.2d 1155, 1159 (Ill. App. Ct. 2002); *Ledesma v. Cannonball, Inc.*, 538 N.E.2d 655, 661 (Ill. App. Ct. 1989); *Neff v. Davenport Packing Co.*, 268 N.E.2d 574, 575 (Ill. App. Ct. 1971)). However, Plaintiff alleges that the City "intentionally and maliciously instituted and pursued a legal criminal action without probable cause against Plaintiff." (SAC ¶ 83.) Plaintiff is not proceeding under a theory of imputed liability but direct liability.[4] Indeed, the Plaintiff does not currently allege a claim against the City under *respondeat superior*. Further, the City cites Medina's Answer to the SAC as showing that the City has admitted that Medina acted within the scope of her employment as a police officer, but Medina's Answer specifically states that she does not answer for the City. *See* (Dkt. 28 ¶¶ 2, 3) ("Defendant Medina does not answer for the City of Chicago ("City") . . . To the extent that other allegations, contained in this paragraph, apply to Defendant City of Chicago, Defendant Medina does not answer . . . .").

---

[4] Malicious-prosecution claims may be made directly against a municipality. *See Ferguson v. City of Chicago*, 820 N.E.2d 455 (Ill. 2004) (allowing malicious-prosecution claim brought directly against the City of Chicago to proceed).

The City of Chicago's Motion to Dismiss [22] is denied as to Count IV.

## CONCLUSION

Medina's Motion to Dismiss [26] is granted with prejudice as to Count VII and denied as to Count I and Count VI. The City of Chicago's Motion to Dismiss [22] is granted as to Count III to the extent that Plaintiff alleges an express policy and denied as to Count III to the extent that Plaintiff alleges the City was deliberately indifferent and had a policy or custom of inadequately training, supervising, and disciplining police officers. The City of Chicago's Motion to Dismiss [22] is denied as to Count IV.

Date: _____October 25, 2016_____       /s/ _____
                                          JOHN W. DARRAH
                                          United States District Court Judge