IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAUREN CHEATHAM, | ) | |
| | ) | |
| Plaintiff, | ) | No. 16 C 3015 |
| | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| CITY OF CHICAGO, a municipal corporation, and YESENIA MEDINA, | ) ) | |
| | ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lauren Cheatham filed suit against the City of Chicago and Unknown Police Officers in the Circuit Court of Cook County, Illinois in February 2016. (*See* Dkt. No. 1). On March 10, 2016, the City of Chicago removed the case and it was assigned to Judge Darrah. (*Id.*). On February 29, 2016, Cheatham filed her Second Amended Complaint against the City of Chicago and Officer Yesenia Medina alleging claims of assault and battery against Medina (Count I), excessive force under 42 U.S.C. § 1983 against Medina (Count II), excessive force under a *Monell* theory against the City (Count III), malicious prosecution under Illinois law against Medina and the City (Counts IV and V), intentional infliction of emotional distress under Illinois law against Medina (Count VI), and negligent infliction of emotional distress under Illinois law against Medina (Count VII). (Dkt. No. 17). On October 25, 2016, Judge Darrah dismissed Cheatham's claim for negligent infliction of emotional distress against Medina (Count VII) and her *Monell* claim based on an express policy against the City (Count III); the Court did not dismiss Cheatham's *Monell* claim against the City based on deliberate indifference and policy and custom (Count III). (Dkt. No. 38).

1

In March 2017, the case was reassigned to this Court. (Dkt. No. 57). This Court thereafter bifurcated and stayed discovery on Cheatham's remaining *Monell* claim. (Dkt. No. 70). On January 26, 2017, Defendants filed a Motion for Summary Judgment on the claims for malicious prosecution (Counts IV and V) and intentional infliction of emotional distress (Count VII). (Dkt. No. 93). For the following reasons, Defendants' Motion for Summary Judgment [93] is granted.

## STATEMENT OF FACTS

The Court takes the relevant facts from the parties' Local Rule ("LR") 56.1 statements of undisputed material facts and supporting exhibits: Defendants' Local Rule 56.1 Statement of Undisputed Material Facts (Dkt. No. 95), Plaintiff's Statement of Additional and Disputed Facts: a Response to Defendant's Statement of Material Facts (Dkt. No. 102), Defendants' Reply to Plaintiff's Response to Defendants' Statement of Undisputed Material Facts (Dkt. No. 111), and Defendants' Response to Plaintiff's Additional Facts. (Dkt. No. 112). The following facts are supported by the record and, except where otherwise noted, are undisputed.

On February 22, 2015, Officer Medina and Officer Razo received a tip that a black male named Damien, who also went by "Fresh," planned to deliver drugs to a Burger King located at 10550 S. Avenue B., Chicago, IL 60617. (Dkt. No. 111 at ¶ 9). The Officers then set up a surveillance at the Burger King. (*Id.* at ¶ 10).

That afternoon, Plaintiff Lauren Cheatham and her cousin's fiancée, Damien Bailey, drove to the same Burger King. (*Id.* at ¶ 11). Cheatham drove her tan Ford Taurus and Bailey rode in the passenger seat. (*Id.* at ¶¶ 12, 15-16). Officer Medina observed Cheatham turn into the Burger King parking lot without activating the car's turn signal. (*Id.* at ¶¶ 13-16). She also

observed that the passenger of the car matched the physical description of the person she and Officer Razo were looking for. (*Id.*).

After Cheatham parked, the Officers approached and directed Cheatham and Bailey to get out of the car. (*Id.* at ¶ 17). The Officers ran a name check of Cheatham and discovered that she was driving on a suspended license. (*Id.* at ¶ 18). Cheatham also failed to produce proof of insurance when the Officers asked her to do so. (*Id.* at ¶ 19). Cheatham claims now that she was insured at the time and had proof of insurance inside the vehicle. (*Id.* at ¶ 19, Dkt. No. 112 at ¶ 10). The Officers arrested Cheatham for driving on a suspended license and for operating a vehicle without insurance. (Dkt. No. 111 at ¶ 20).

The Officers transported Cheatham to the 4th District Police station and placed her in a holding cell sitting on a bench by herself with her hands cuffed behind her back. (*Id.* at ¶¶ 20-21). Cheatham testified that the Officers entered the cell and asked her for information about drugs and "Fresh" and that Medina insisted that Cheatham was dating Bailey, accused her of being a "drug mule" for him, called Cheatham a "bitch," and "just kept drilling" Cheatham and saying she was lying. (*Id.* at ¶ 22; Dkt. No. 112 at ¶ 11). Cheatham testified that she found the questioning "offensive" and that she eventually responded, "You know what, fuck the police. I don't have to say nothing." (Dkt. No. 111 at ¶¶ 22, 27).

Cheatham testified that, at that point, Officer Medina motioned her partner out of the holding cell, shut the door, and slapped Cheatham one time on the left side of her face causing a tooth to come loose and fall out. (*Id.* at ¶¶ 23-25). Cheatham testified that she was "very scared" Medina would hit her again and tried to get away from Medina by moving to the opposite corner of the room and then pleaded for help. (*Id.* at ¶ 28, Dkt. No. 112 at ¶ 12). Medina denies

3

slapping Cheatham and claims she merely pushed Cheatham back after Cheatham charged at her. (Dkt. No. 111 at ¶ 26; Dkt. No. 112 at ¶ 12).

Later that day, Medina issued three traffic tickets to Cheatham for driving on a suspended license, operating a vehicle without insurance, and failing to use a turn signal. (Dkt. No. 111 at ¶ 34). Medina also signed two criminal complaints against Cheatham for aggravated assault in violation of 720 ILCS 5.0/12-2-B-4 and resisting or obstructing a police officer in violation of 720 ILCS 5.0/31-1-A. (Dkt. No. 111 at ¶ 27). The complaint for aggravated assault alleged that Cheatham "knowingly and without lawful authority charged at P/O Medina #18375 and then swung her legs placing P/O Medina #18375 in reasonable apprehension of receiving a battery." (Dkt. No. 95, Ex. B; Dkt. No. 112 at ¶ 14). The complaint for resisting or obstructing a police officer alleged that Cheatham "knowingly resisted the performance of an authorized act within the officer's official capacity . . . in that defendant did pulled [sic] her body in an attempt to defeat a custodial search." (Dkt. No. 95, Ex. B; Dkt. No. 112 at ¶ 17).

On January 4, 2016, Cheatham pleaded guilty to the resisting charge at a hearing in the Circuit Court of Cook County. (*See* Dkt. No. 95, Ex. L). At the hearing, the State dismissed the aggravated assault charge pursuant to *nolle prosequi* and struck with leave to reinstate the three traffic charges. (*See* Dkt. No. 95, Ex. L). Specifically, the following exchange took place between the judge, the Assistant State's Attorney, and the Assistant Public Defender:

> **DEFENSE COUNSEL:** Andrew Hodgetts, Assistant Public Defender, Your Honor. I do believe we have a proposed resolution in this case.
>
> **THE COURT:** Okay.
>
> **ASA:** Judge, as to Count I, motion state nolle pros.
>
> **THE COURT:** Okay.
>
> **ASA:** As to Count II resisting, 12 months conditional discharge and a hundred hours independent community service.

> **THE COURT:** Okay.
>
> **ASA:** Counts III, IV and V, motion state SOL.

(*Id.* at 2:12-24). Cheatham also testified during the hearing that she entered the guilty plea voluntarily:

> **THE COURT:** All right, so, ma'am, you understand that you have been charged with resisting arrest?
>
> **THE DEFENDANT:** Yes.
>
> **THE COURT:** All right. And is it your intent to plead guilty to that charge today?
>
> **THE DEFENDANT:** Yes.
>
> **THE COURT:** Do you understand that you have the right to plead not guilty and have a trial before a judge or a jury?
>
> **THE DEFENDANT:** Yes
>
> . . .
>
> **THE COURT:** Your attorney and the State's Attorney have come to an agreement on what they believe your sentence should be, and they have made that recommendation to me. Do you understand I am not bound by their agreement?
>
> **THE DEFENDANT:** Yes.
>
> **THE COURT:** Has anyone forced you in any way or threatened you at all to get you to plead guilty here today?
>
> **THE DEFENDANT:** No.
>
> **THE COURT:** Are you pleading guilty of your own free will?
>
> **THE DEFENDANT:** Yes.

(*Id.* at 3:11-20, 5:7-19).

Cheatham testified in a deposition that it was her understanding that if she pleaded guilty to the charge for resisting or obstructing a police officer, the State would drop the other charges:

> **Q.** Do you recall how the trial ended or concluded?
>
> **A.** Yes. I pled guilty to resisting arrest.

> **Q.** Do you recall any conversation with the State's Attorney's office that -- as to what they would do with the other charges if you pled guilty?
>
> **A.** They would drop them.

(Dkt. No. 111 at ¶ 37; Dkt. No. 95, Ex. C at 180:19-181:13).

The Court imposed a sentence of 12 months supervision, 100 hours of community service and mandatory fees and costs of $369, as agreed by the parties. (Dkt. No. 111 at ¶ 42; Dkt. No. 95, Ex. C at 6:14-19). The Court also informed Cheatham of her right to appeal her guilty plea at a later date. (Dkt. No. 112 at ¶ 40). Cheatham never appealed her plea. (*Id.* at ¶ 41).

When asked in her deposition about any emotional distress she suffered as a result of this experience, Cheatham reiterated that she found Medina's questioning in the holding cell to be "offensive" and claimed that she suffered "wrongful prosecution, embarrassment, pain and suffering" and, as a result of this incident, has a general apprehension toward police officers. (*Id.* at ¶¶ 27-29). Cheatham testified also that she had felt concerned about the effect the charges would have on her education because she missed lectures and had to reschedule a final exam due to court appearances. (*Id.* at ¶ 28; Dkt. No. 95, Ex. C at 208:5-21). Cheatham admitted that there are no activities that she could do before the incident that she can no longer do because of emotional distress and that she never sought medical treatment or saw a counselor, therapist or psychologist as a result of this incident. (Dkt. No. 111 at ¶¶ 30-32).

## **LEGAL STANDARD**

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts do not weigh the evidence or make credibility determinations when deciding motions for summary judgment. *See Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). Rather, the Court must "construe all factual disputes and draw all reasonable inferences in favor

of [] the non-moving party." *Cole v. Bd. of Trustees of N. Ill. Univ.*, 838 F.3d 888, 895 (7th Cir. 2016), cert. denied, 137 S.Ct. 1614 (2017). "A factual dispute is genuine only if a reasonable jury could find for either party." *Nichols v. Mich. City Plant Planning Dep't,* 755 F.3d 594, 599 (7th Cir. 2014) (internal quotation omitted). The initial burden is on the moving party to inform the district court why a trial is not necessary. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Upon such a showing, the nonmoving party must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 322.) In other words, summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc*., 325 F.3d 892, 901 (7th Cir. 2003) (internal quotations omitted).

## **DISCUSSION**

Defendants argue that the malicious prosecution claim against the City should be dismissed because it is duplicative of the claim against Medina and, therefore, unnecessary. Defendants also argue that they are entitled to summary judgment on the malicious prosecution claims against the City and Medina because Cheatham cannot prove that the criminal proceedings terminated in a manner indicative of innocence. Finally, Defendants argue they are entitled summary judgment on the intentional infliction of emotion distress claim because Cheatham cannot prove she suffered severe emotional distress.

**I.   Malicious Prosecution Claims (Counts IV and V)**

    **A.   Defendants are entitled to summary judgment on the malicious prosecution claim against City as duplicative of the malicious prosecution claim against Medina.**

Under Illinois law, a plaintiff can state a claim for malicious prosecution against a municipality such as the City based on a theory of direct liability. *See, e.g., Ferguson v. City of Chicago*, 820 N.E.2d 455 (Ill. 2004) (allowing malicious-prosecution claim brought directly against the City of Chicago to proceed)). Judge Darrah recognized as much when previously denying the City's motion to dismiss Count IV. (*See* Dkt. No. 38 at 13, n.4 (citing *Ferguson*)). However, the City may only act through its employees. Therefore, even under a theory of direct liability, the City's liability on Count IV is based on the actions of its employees. *See* 745 ILCS § 10/2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable.").

Here, the City's liability is based on the actions of only one employee: Defendant Medina. Cheatham does not dispute—in her Response to Defendant's Motion for Summary Judgment or otherwise—that, at this stage, she has failed to identify any other agent of the City who allegedly acted to maliciously prosecute her or who had a role leading to her prosecution. (*See* Dkt. No. 94 at 5-6; Dkt. No. 103 at 5); *see also C & N Corp. v. Gregory Kane & Illinois River Winery, Inc.*, 756 F.3d 1024, 1026 (7th Cir. 2014) (failure to respond to any argument in response to a summary judgment motion constitutes a waiver of that argument). Indeed, the undisputed facts demonstrate that Medina issued the three traffic tickets to Cheatham and signed the two criminal complaints that Cheatham claims are unfounded and that Cheatham did not go to trial. Thus, only Medina's actions can be imputed to the City for purposes of the malicious prosecution claim.

The City is also liable for Medina's actions under Count V. The City admitted and Cheatham does not dispute that Medina was acting in the course and scope of her employment with the City at all times relevant to the allegations in Cheatham's pleading, thereby admitting vicarious liability for Medina's actions. (Dkt. No. 111 at ¶ 2; Dkt. No. 95 at 7). Illinois law requires that the City indemnify Medina for any compensatory damages arising from acts committed within the scope of her employment. *See* 745 ILCS 10/9-102.

Therefore, the malicious prosecution claim against the City is duplicative because the City is liable for malicious prosecution based on Medina's actions under Count IV to the same extent it is liable for malicious prosecution based on its Medina's actions under Count V. In other words, at this stage, Count IV functions as an alternative theory by which to impute Medina's liability to the City. Under Illinois law, "once an employer admits responsibility under *respondeat superior*, a plaintiff may not proceed against the employer on another theory of imputed liability." *Gant v. L.U. Transp., Inc.*, 770 N.E.2d 1155, 1158 (Ill. 2002); *see also, e.g., Thompson v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 854 N.E.2d 744, 747 (Ill. App. Ct. 2006) (negligent entrustment claim "duplicative and unnecessary" where "it is not disputed that the employee's negligence is to be imputed to the employer under the doctrine of *respondeat superior*"). "The fault of one party cannot be assessed twice." *Gant*, 770 N.E.2d at 1160.

Therefore, the Court grants summary judgment on Cheatham's malicious prosecution claim against the City (Count IV). In the alternative, the City is entitled to summary judgment on the malicious prosecution claim on other grounds as discussed below.

**B.  Defendants are entitled to summary judgment on the malicious prosecution claim against Medina.**

To prevail on a malicious prosecution claim under Illinois law, a plaintiff must prove "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the

defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Holland v. City of Chicago*, 643 F.3d 248, 254 (7th Cir. 2011) (quoting *Swick v. Liautaud,* 662 N.E.2d 1238, 1242 (Ill. 1996)); *see also Hurlbert v. Charles*, 938 N.E.2d 507, 512 (Ill. 2010). "The absence of any single element is fatal to a claim." *Id.* The second element "requires proof that the criminal proceeding was terminated in a manner indicative of the plaintiff's innocence." *Thompson v. City of Chicago*, 722 F.3d 963, 978 (7th Cir. 2013). "Malicious prosecution is offense-specific," so Cheatham need only show that the prosecution of one of his charges was terminated in her favor to maintain her claim. *Williams v. City of Chicago*, 733 F.3d 749, 759 (7th Cir. 2013); *see also Starks v. City of Waukegan*, 123 F. Supp. 3d 1036, 1060 (N.D. Ill. 2015).

Defendant argues Cheatham cannot prove any of the charges against her were terminated in a manner indicative of innocence. Cheatham was charged with resisting or obstructing a police officer, aggravated assault, and three traffic violations. She pleaded guilty to the charge for resisting or obstructing a police officer and the State dismissed the aggravated assault charge pursuant to *nolle prosequi* and dismissed the three traffic violations with leave to reinstate. Cheatham does not dispute that the charge for resisting or obstructing a police officer to which she pleaded guilty was not terminated in her favor. *See, e.g., Bontkowski v. United States*, 28 F.3d 36, 37 (7th Cir. 1994) (Under Illinois law, "[a] prosecution ending in a guilty plea does not end in a 'manner not indicative of Plaintiff's innocence.'"); *Renaud v. City of Chicago*, No. 12-CV-08758, 2013 WL 2242304, at *4 (N.D. Ill. May 21, 2013) ("A finding of guilt does not constitute a termination favorable to the plaintiff."). Therefore, the focus is on the dismissed charges.

Plaintiff bears the burden of showing the dismissals pursuant to *nolle prosequi* and with leave to reinstate are indicative of innocence. *See Penn v. Harris*, 296 F.3d 573, 577 (7th Cir. 2002) (Plaintiff "bears the burden of showing that the circumstances surrounding the dismissal with leave to reinstate are indicative of his innocence.") (citing *Swick*, 662 N.E.2d at 1242); *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 925 (7th Cir. 2001) ("[T]he plaintiff bears the burden of showing that the *nolle prosequi* was entered for reasons consistent with his innocence.") (citing *Swick*, 662 N.E.2d at 1242–43). The burden "will only be met if the plaintiff establishes that '[t]he circumstances surrounding the abandonment of the criminal proceedings . . . compel an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution.'" *Id.* (quoting *Swick*, 662 N.E.2d at 1243). However, a prosecutor's dismissal of a charge does *not* imply innocence when it is part of a plea bargain. *See Bridewell v. Eberle*, 730 F.3d 672, 677 (7th Cir. 2013) (citing *Swick*, 662 N.E.2d at 1242) (emphasis added); *see also Logan*, 246 F.3d at 925 ("[A] *nolle prosequi* entered as the result of an agreement or compromise with the accused is not considered indicative of a plaintiff's innocence.").

Defendants argue that the aggravated assault charge and traffic violations were dismissed as part of a plea bargain with Cheatham and, therefore, not indicative of innocence as a matter of law. The undisputed facts in the record support this position. At the January 4 hearing, Cheatham's attorney represented to Judge Hamilton that the parties had reached a "proposed resolution *in this case*," suggesting that the resolution encompassed *all* pending charges in the case and not just the charge to which Cheatham pleaded guilty. (Dkt. No 95, Ex. L at 2:2-24 (emphasis added)). The prosecutor then presented the resolution to the Court by listing the proposed dispositions as to *all* five charges against Cheatham, again suggesting the resolution collectively addressed all pending charges. (*Id.*) Additionally, Plaintiff admitted during her

11

deposition that, as she understood it at the time, the State intended to dismiss the other charges against her as a result of her pleading guilty to the charge for resisting arrest. (Dkt. No. 95, Ex. C at 180:19-181:13).[1] Finally, as part of the agreed-upon resolution of the charge against her, Cheatham accepted and the Court imposed the recommended sentence of 12 months' supervision. (*Id.*). Illinois courts have found that a sentence of supervision is not indicative of innocence and acts as a bar to a malicious prosecution claim. *See, e.g., Turner v. Green*, 704 F. Supp. 139, 141 (N.D. Ill. 1988) (citing *Hajawii v. Venture Stores, Inc.*, 465 N.E.2d 573, 575 (Ill. App. Ct.1984) and *Stanger v. Felix*, 422 N.E.2d 1142, 1144 (Ill. App. Ct.1981)).

Cheatham does not point to any evidence in the record demonstrating that the charges were *not* dismissed as part of a plea agreement. Instead, Cheatham argues that a reasonable jury could find that the charges were dismissed because the prosecutor lacked reasonable grounds to pursue them and relies only on cases where no plea agreement was entered. *See, e.g., Starks,* 123 F. Supp. 3d 1036 (no guilty plea or plea agreement; proceedings terminated in manner indicative of innocence where DNA testing eliminated plaintiff as source of semen). But the fact that the charges were dismissed as part of a plea bargain is dispositive and defeats a finding that the charges were terminated in a manner indicative of innocence. *See, e.g., see also Bridewell v. Eberle*, 730 F.3d 672, 677 (7th Cir. 2013) (noting absence of "any Illinois case holding that it is

---

[1] Cheatham argues that her deposition testimony regarding conversations with the prosecutor is hearsay and, therefore, cannot be considered by the Court at summary judgment. (*See* Dkt. No. 103 at 8); *see also* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) (affirming district court's refusal to consider hearsay statements in its summary judgment decision). The Court disagrees. Cheatham's statements as to what the State's Attorney's Office told her are admissible under Fed. R. Civ. P 803(3) as "a statement of the declarant's mind" because they "described the actions [the prosecutors] took… and why." *Dean v. City of Chicago*, 896 F. Supp. 2d 699, 709 (N.D. Ill. 2012); *see also Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676 (7th Cir. 2011) (loan officer's statement admissible under Rule 803(3) because "[i]t was not an assertion of a factual matter but a statement describing the bank's collective intentions: we won't approve a loan until you get the foreclosure issue resolved").

proper to look past the form of a plea bargain to inquire what would have happened had a compromise not been reached").

Because Cheatham raises no genuine issue of material fact as to whether the charges were dismissed pursuant to a plea agreement, Defendants are entitled to summary judgment on the malicious prosecution claims (Count IV and V). Accordingly, the Court need not address Defendant's argument in the alternative that Cheatham's malicious prosecution claims are *Heck*-barred. *See e.g., Lieberman v. Liberty Healthcare Corp.*, 948 N.E.2d 1100, 1108 (2011) (applying the federal *Heck* scheme to state law tort claims).

## II. Intentional Infliction of Emotion Distress (Count VI)

"An intentional infliction of emotional distress claim under Illinois law requires proof of three elements: 'First, the conduct involved must be truly extreme and outrageous. Second, the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress. Third, the conduct must in fact cause severe emotional distress.'" *Cairel v. Alderden*, 821 F.3d 823, 835 (7th Cir.), *cert. denied*, 137 S. Ct. 493 (2016) (quoting *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003)). Defendants argue there is no evidence in the record to show Cheatham suffered severe emotional distress.

"'Severe emotional distress' is distress so severe that no reasonable person could be expected to endure it." *Lifton v. Bd. of Educ. of City of Chicago*, 416 F.3d 571, 579 (7th Cir. 2005) (citing *Thomas v. Fuerst*, 803 N.E.2d 619, 625 (Ill. App. Ct. 2004)). Cheatham testified to the following emotional damages: (1) she found Medina's questioning before the slap "offensive"; (2) after the slap, she was "very scared" of being hit again, moved to the opposite corner of the holding cell as Medina, and pleaded for help; (3) she suffered "wrongful

13

prosecution, embarrassment, pain and suffering"; (4) she now has an apprehension toward police officers; and (5) she felt "concern" over missing classes and a final for court hearings. Under Illinois law, emotional distress such as "fright, horror, grief, shame, humiliation and worry is not sufficient" to establish "severe emotional distress" for purposes of a claim for intentional infliction of emotional distress. *Lovi v. Vill. of Arlington Heights*, 62 F. Supp. 3d 756, 769 (N.D. Ill. 2014) (quoting *Adams v. Sussman & Hertzberg, Ltd.*, 684 N.E.2d 935 (Ill. App. Ct. 1997)). Neither is feeling "appalled, annoyed, aggravated, disgusted, offended, upset, embarrassed, uncomfortable, belittled and self-conscious." *Ponticiello v. Aramark Unif. & Career Apparel Servs., Inc.*, No. 05 C 1137, 2006 WL 2699416, at *13 (N.D. Ill. Sept. 19, 2006) (citing *Adams*, 684 N.E. 2d at 942). Therefore, none of the emotions Cheatham claims she felt as a result of the incident—offended, scared, embarrassed, apprehensive, concerned—is sufficient to demonstrate "severe emotional distress." Additionally, Cheatham admits that she never sought medical treatment or saw a counselor, therapist or psychologist to address the distress she allegedly suffered, as a reasonable person would do if the distress were so severe as to be unendurable. *See, e.g., Ponticiello*, 2006 WL 2699416, at *13 ("In general, severe emotional distress requires some medical treatment.") (citing *Adams*, 684 N.E.2d at 942); *Woods v. Clay*, No. 01 C 6618, 2005 WL 43239, at *17 (N.D. Ill. Jan. 10, 2005) ("It is undisputed that [plaintiffs] did not seek medical treatment or mental health treatment for any of their emotional injuries, nor did they take or receive any medications for their emotional injuries . . . suggest[ing] their distress does not rise to the level of severity necessary").

Cheatham relies on *Rodriguez v. City of Chicago* to support her argument that the alleged distress is sufficient. No. 08 C 2095, 2009 WL 4787937, at *5 (N.D. Ill. Dec. 9, 2009). As an initial matter, *Rodriguez* is not binding on this Court. Regardless, it is distinguishable. In

*Rodriguez*, an officer threatened to throw the plaintiff into the lake while handcuffed and then drove the plaintiff to the lakefront and made her watch the crashing waves in order to frighten her. *Id.* at *5. The plaintiff presented evidence that she truly feared she would die to the extent that she urinated in her clothing and pleaded with the defendant-officer to spare her life. *Id.* at *2. Here, Cheatham alleges only that she was scared Medina might slap her again and that she pleaded for help. Cheatham does not allege such an extreme physical reaction to her fear.

Cheatham's alleged emotional distress is insufficient as a matter of law. Defendants are entitled to summary judgment on Cheatham's claim for intentional infliction of emotional distress (Count VI).

## CONCLUSION

For the reasons stated above, the Court grants Defendants' Motion for Summary Judgment [93]. Counts IV, V and VI of Cheatham's Second Amended Complaint [17] are dismissed.

_____
Hon. Virginia M. Kendall
United States District Judge

Date: May 7, 2018

15